We have four cases on the calendar this morning, a government employee case, two patent cases and a case from the Court of Federal Claims. After we hear the first case, the government employee case, the panel will briefly adjourn and then return with a slightly modified panel. One just as good. And we will hear the other two patent cases. So, the first case is Catherine Aculeta, Director of OPM v. Tony Hopper and Merck Systems Protection Board, 2013-31-77. Ms. Kidmiller.  This Court should reverse the Board's decision invalidating OPM's longstanding suitability regulations and instead adopt OPM's interpretation, which is the only one in this case which reads the Civil Service Reform Act, or CSRA, scheme holistically and comprehensively, harmonizing each section and its implementing regulations. To be clear at the outset, we do not ask this Court to hold that a regulation can somehow trump a statute or even that the word removal in 75-12 is ambiguous, although we certainly make that argument in the alternative. But first and foremost, we ask this Court to read the statute as a whole and adopt OPM's interpretation and hold that Chapter 75 is not applicable to suitability action. When you say read the statute as a whole, I mean, you're really saying don't read Chapter 75 the way it's written. Isn't that right? No, Your Honor. We're saying that Chapter 75, as written, applies to adverse actions by employing agencies. But the focus specifically on Chapter 75, to the exclusion of other sections, reads out the authorities that Congress gave both to OPM and to the President, which are the source of the suitability program. Well, you would concede that there was an adverse action, right? No. I mean, we concede that OPM directed the Social Security Administration to remove Mr. Hopper, and he was removed. Why is that not an adverse action, the removal, the disbarment, the cancellation? Well, it's – I mean, we don't concede that it's an adverse action under the meaning of Chapter 75. In the same – and it's in the same way that the suitability program – But Chapter 75 uses the word removal in it. That's right. That's right. And there are other examples of times when individuals are removed, but they fall under co-existing sections, co-existing authorities. So, for example, an employee removed for poor performance is an employee. They're removed. So under the board's reading, you know, those two words alone would somehow bring them within the coverage of Chapter 75, but they're clearly covered by a separate statutory section. The suitability system is a separate and co-extensive section in the same way. Is it covered by a statute? Where does the authority come from? I see it in a regulation. The authority comes from – Which incidentally also provides for deals with the MSPB. That's right. OPM has given individuals who – against whom suitability actions are taken some limited MSPB review rights. But to Your Honor's question about the statutory source, there are four authorities in particular that are very important. Both pre- and post-CSRA, 3301 through 3303, that's Congress vested in the President authority to prescribe regulations to regulate conduct and fitness for the admission to the civil service. And the President, in turn, again, even before the CSRA, promulgated that – Correct, but those regulations, they expressly stated otherwise. I mean, it does have a savings clause in it, correct? So when the CSRA – yes, when the CSRA came – So doesn't that mean that if there's a contradiction or inconsistency between the statute and the regulation, that the statute is to apply? Yes, however, there's no conflict here. I mean, it's a basic principle of statutory construction. Why do you say there's no conflict? You're basing your argument on a regulation, and the Board is going to argue their position based on the statute. That's right. But this – again, this is not – we're not simply resting on a regulation. I want to be clear that we are resting on – the authority for OPM's program here comes from the statutory sections and from the civil service rules, which come from executive order. And although they're codified in the CFR – But those are all general, aren't they? Those are all general. No, Your Honor – You were talking about a specific employee with the right to appeal to the Board. No, Your Honor. The Civil Service Rule 5 includes specifically Section 5.3, in which the President directs OPM to make suitability determinations and take suitability actions, including removal, debarment, and the other actions, and even gives OPM – thus, in OPM, the authority to take actions against agency employers, individuals in the agency who refuse to comply with orders. You're saying there's a clear conflict. We think there is, Your Honor. Yes. But how do you get around the fact that Congress actually made specific exceptions in Chapter 75 with respect to certain types of removal and did not give MSPB authority over those, but that suitability removals are not one of those exceptions? Because, Your Honor, this Court has already confirmed that the list of exceptions in 7513 is not exclusive. In Andrew Yersky, Horner v. Andrew Yersky, this Court upheld OPM's longstanding emergency furlough regulation, which exempted from the meaning of furloughs of 30 days or less in Chapter 7512, exempted from that certain emergency furloughs that the agency had to take very quickly. So even though the plain language there was precisely the same type of analysis that's involved in this case, the statute plainly said furlough, but this Court faulted the Board for failing to consider OPM's longstanding history of its regulation, which, by the way, is not a regulation based on the civil service rules and the same sort of presidential authority as the regulation at issue here. And the Court found that furlough was ambiguous. The same is true of removal in this case. Even if we could say that this regulatory scheme somehow creates an ambiguity in a statute that what Thomas faced doesn't seem to be ambiguous, even if we could find an ambiguity, wouldn't the City of Arlington say that we would have to then defer to MSPB's analysis of its own jurisdiction? No, Your Honor. And first I want to make clear we're not asking the Court to hold in the first instance that this other scheme creates an ambiguity, but rather that it is a separate, coextensive scheme that exists beside Chapter 75, just like Chapter 43, for example, exists side by side with Chapter 75. City of Arlington does not warrant any deference to the Board. Rather, it warrants deference to OPM's interpretation in this case. In City of Arlington, the Supreme Court... You're asking us to find an ambiguity in the statute, correct? In the alternative, we do ask you to find an ambiguity in the statute. So we'd have to apply Chevron in that case. That's right. And then to apply Chevron... Since this case involves the Board's jurisdiction, wouldn't any deference falling under Chevron go to the Board? No, Your Honor. And for a number of reasons. Congress has given OPM, not the Board, interpretive authority over the statutory provision. But we're talking about the jurisdiction of the Board in this case. That's right. And Congress has vested authority to define that jurisdiction and define the terms in Chapter 75 first and foremost to OPM. City of Arlington simply says that just because the issue in the case is one of jurisdiction does not mean that Chevron is somehow inapplicable. But City of Arlington doesn't involve a statute like this one where different agencies have differing interpretive authority over different provisions. As this Court explained most recently in Mitchell v. Department of Justice... That OPM has the authority to define or to give or take away jurisdiction from the Board? Yes, Your Honor, to the extent that there's an ambiguity to be resolved in the statute. That is found in Section 7514, and this Court has recognized that authority on numerous occasions. So most recently in Mitchell v. Department of Justice, this Court cited Chapter 7514 and specifically noted in that case where the Board was a party, that the Board had not requested any deference. And the Court explained, well, that's because deference... And I should mention that at issue in that case was definition of a term in Chapter 75, figuring out who is an employee for purposes of 7511. You mentioned 7514. OPM may prescribe regulations to carry out the purpose of the subchapter, except as it concerns any matter with respect to which the Board may prescribe regulations. That's right, Your Honor. And so the OPM has primary interpretive authority over the system under which adverse actions are taken. That is explained both by the Supreme Court in Egan and the D.C. Circuit in Perez. The Board, by contrast, has interpretive authority over provisions affecting its hearing and adjudicatory functions. So, for example, if there's an ambiguity as to what kind of notice do you need for an appeal to the Board, that would be the kind of situation where the Board would have primary interpretive authority. Now, was he saying the exception is for procedural aspects, but isn't it a fortiori the exception would apply to statutory aspects that the Board is entitled or required to apply? I'm not sure I understand the distinction, because there are statutory procedural aspects. And where the Board's own adjudicatory functions are at issue, it has deference. But I asked this Court to take a look at Mitchell, which specifically acknowledged there that OPM is the agency to which the Court would defer regarding a definition. If we look to the Board's jurisdiction, let's say in another case tomorrow, and we're looking to see the scope of its jurisdiction, are you saying that we would look to OPM's regulations in order to answer that question? Or to OPM determinations? If there were a relevant OPM interpretation answering the question before the Court, then yes, we think that's the proper place to look. Where's the authority, again, that gives OPM the basis to determine the Board's jurisdiction? It is primarily in Chapter 7514, which this Court relied on not only in Mitchell, but the Board in the underlying decision here in Aguzzi, recognized OPM's authority and recognized that Chevron deference would be due if the Board had found an ambiguity. Similarly, in Wilder, this Court was looking at a definition of a term in 7511, so again, we're in the same subchapter 2 of the statute, and said that it was a classic case of Chevron deference to OPM under its authority in 7514. Ms. Kidmiller, you wanted to save four minutes. You're well into it. We'll give you your full four minutes. Thank you, Your Honor. Mr. Grahalis, is it? Yes, Your Honor. And you're representing Mr. Hopper? Correct. And you're going to take eight minutes. May it please the Court, if there was a question about who deserves deference when it comes to the Board's jurisdiction, we believe the City of Arlington clearly resolved that in favor of the Board. Just as well, there was clearly an adverse action here. It was a removal. The SF50 for Mr. Hopper's removal refers to it as a removal, and it was a separation from service. There is no ambiguity in 7512-1. Is it your theory that the Board, that OPM's authority to do suitability determinations essentially requires them to do it only for those employees who aren't tenured? Yes, Your Honor, because under 7514, which we just referenced, as well as under 1103, I believe it's A5, the extent of OPM's power over suitability or its jurisdiction, if you will, extends only so far as the bridge of the Board knows that the Board has the jurisdiction here to over adverse actions against employees, and that is exactly what Mr. Hopper was. He was not an applicant, nor was he probationary.  He was an employee. But as I understand it, Mr. Hopper wasn't, there was no probationary period because of his preferences, his veterans' preferences. Is that right? He would have come in, he had to have served, I believe it's a year as a preference eligible, so he came in with Board appeal rights. I would have to confirm that looking at the appendix, Your Honor. But in the normal case, if someone's just hired from outside, and they have their, that OPM could have a year to do their suitability determinations before the Board's authority over that employee kicks in with respect to removal. Is that right? I believe so, Your Honor. They would have the probationary period in which to do that. But even so here, they have the time prior to appointment in which to do that. Moreover, contrary to what OPM has said, nothing in what the Board has done in either Aguzzi or in this case prevents OPM from directing a removal. All that the Board has done is harmonize the rights of an employee to appeal an adverse action, the power of the Board to adjudicate that adverse action with OPM's role as a gatekeeper for admission into the civil service. Now, if you look at the regulation 731.5, it provides for appeal to the Board with respect to the suitability determination. And then under B, if the Board finds that one or more of the charges supported by a preponderance of the evidence, it must affirm the suitability determination. Right? Did it do that? That's what the regulation says, Your Honor, yes. And did the Board here affirm the suitability determination but ameliorate the penalty? Well, if you look at the initial decision reached by the administrative judge, the administrative judge does not in fact find Mr. Hopper unsuitable. What the administrative judge did was find the charge supported but not the penalty. But also this is why OPM's reliance on, and forgive me if I say it wrong, Andrzejewski, Horner v. Andrzejewski is misplaced. That case is not at all four square. For one, the regulation that this court was reviewing there, which was 752.404.D2, pertained only to what notice and reply opportunity was due in an emergency furlough under 7513B. But isn't 731 key? It must affirm the suitability determination and then it will determine whether the action taken is appropriate. The action is the penalty, right? Well, Your Honor, that is, it is appropriate and that is what the regulation says and that applies insofar as it applies to a probationer or an individual who is not an employee with appeal rights. But even so, if there is ambiguity here, the City of Arlington, as well as the Artman case, we believe, resolved that in the board's favor. What the board has done here simply makes sense. It is the board that has harmonized two disparate sections of the statute. And again, let me be clear. One thing we have not heard, either in the briefs or here today, is statutory authority that gives OPM the power to exclude the removal of an employee for suitability reasons from the full scope of the board's jurisdiction. You're saying 7514 isn't it? 7514 isn't it at all because that, if you read it in conjunction with 1103, stands for the proposition we believe that there is a sharing of authority between the board and OPM. And OPM was given suitability as it applies to non-employees and the board correctly determined that it has jurisdiction as an adverse action as a removal over the removal of an employee. Are you saying there's no conflict here, and without in any way suggesting we would do this, that we have nothing to resolve that we simply affirm, even under Rule 36 with no opinion, that would be fine with you? Or do you agree that there's a problem we have to solve? I don't think it would be fair to say it should be affirmed with no opinion. That is not to say that we believe that there is an ambiguity that needs to be resolved. We believe that 7512.1 means what it says. Just as well, we believe that 7701A and 7513D also say what they say, and what they say is that it is the board that has jurisdiction over removals. So is it your position that it's not that the statute is ambiguous, but because there are these dueling authorities, that to the extent they can be married or reconciled, the board has already done that? That is correct. We don't believe there is an ambiguity here, but if there is, deference under Arlington and Artman go to the board, and what the board has done is reasonable, and it is a permissible construction of a term of the statute which the board administers. What's your response to OPM's argument that, okay, we've got two agencies here, you're supposed to give deference, so we should be giving deference to OPM, not to the board? The argument we have there is that, as we say in our brief, it's the MSPB that has the better claim to deference here. And that, again, is the Artman case, where how can it be that if the board has primary responsibility for interpreting 7512.3, it must also have primary responsibility for determining the meaning of 7512.1? And again, going back to Andrzejewski, that case is inapposite. Appealability simply was not an issue. The question there was whether an emergency furlough required the notice and reply opportunity in 7513. That was the issue. That was the question that this court sought to answer. And so to the extent it went beyond that, we believe, first of all, that that passage in Andrzejewski is nothing more than dicta. Second, what allowed the court- Andrzejewski, is that a goosey? No, Your Honor. May I call it Horner? All right. Okay. In the Horner case, what allowed this court to resolve the conflict there was OPM could point to a very specific statute, the Anti-Deficiency Act, that created a concrete conflict. They have no such statute to rely upon here. Nor has the board done anything that is in conflict with any statute. And the board has acted within its authority to determine its own jurisdiction, and it has acted- Assuming that the board has authority to review a suitability decision, where is its authority to revise the penalty or to establish a whole new penalty? Your Honor, I see I've exceeded my time. May I answer? Please answer the question. I believe that's in- We cite it in our briefs. OPM- Excuse me. The board has statutory mitigation authority. I believe it's 7701B2A and 7701B3. The board has, by statute, the authority to mitigate. And this is no different. What the board has done here is really no different from what the board did in Douglas. It is exercising or interpreting its mitigation authority under the statute through a decision reached by full board adjudication. And for those reasons, we believe the board should be affirmed. Thank you, counsel. Let's hear from Mr. Garber, is it? Yes. Counsel from the board. How do we understand that the board has mitigation authority over the penalty? Does that mean that the board is now at the trial level and hearing new evidence, the Douglas factors and items or evidence that the OPM did not consider? If the court gets to this question, the court would have to agree first that this is a Chapter 75 case. And once that determination is made, it follows that, yes, the board has mitigation authority. And if this case falls under Devine versus Sudemeister. What does mitigation authority mean to you? Does that mean remand and ask the deciding agency to revise its penalty? Or are you saying that the board has the capacity to hear all new evidence or facts that were not before the agency, facts that were not before OPM, and to decide a whole new penalty? Is that mitigation? Normally what would happen in mitigation, this is admittedly not the best case to look at this issue because here OPM put in nothing on the penalty. They decided to do nothing but argue that Aguzzi was wrong. So we have no record to look at here on the penalty. But normally you would have a deciding official who would testify, and the deciding official would say, here are the reasons I considered, the factors I considered when I made the decision that removal was necessary. And then the board would decide whether that was reasonable or not and either uphold it or possibly mitigate. Well, how do you resolve that mitigation authority that you think the board has with the fact that OPM has the authority to direct removal? So is it your position that they can direct removal but you can change that? No, I think this case is the same as the other case that the court has before HERN, which I realize has been stated and may not be before this panel, but in that case the suitability action was taken by the Department of the Army. So it doesn't matter whether it's directed by OPM or whether the agency itself takes the action. Either way, it's going to fall under the adverse action appeals if the individual is an employee, and that is the critical factor. It's a factor that even before the Civil Service Reform Act was passed by Congress, if you look at page 92 of the opening brief, the addendum to the opening brief, Petitioner's Opening Brief, includes 1978 regulation, this is pre-Reform Act, part 754, and it's called, by the way, adverse actions by the commission. I know that the petitioner has taken pains to say this is not an adverse action. That's what the commission called these things. When there's an employee involved, it's an adverse action. And what the commission did was they drew a line in 754.101, and the line was drawn with those who have currently served more than one year, other than a temporary appointment. So Congress picked up on this line, which in Congress drew the same line in 7511A that was drawn in the regulations. And those cases where you have a tenured employee are treated under Chapter 75 if it's a removal. So to the extent that, and again, the commission had a part 731 and a part 754 and a part 752, but the tenured employees were not just under 731. They were treated in a different way, and that's what Congress did. Congress drew a very clear line as to who is an employee and who's not, and Mr. Hopper meets the definition. The board is bound by the statutory scheme. The Supreme Court has called the Reform Act a comprehensive statutory framework that was intended to replace outdated patchwork of regulations. What does the Folio case do for us or to us? The Folio case is a treatment of non-employees. So Mr. Folio, I believe, was an applicant who never actually served. So, again, that's on that other side of the line, the line of one year. Folio did not have one year, so Folio has whatever rights OPM chooses to give to it. So when Folio says the board is precluded only from reviewing or modifying the ultimate action taken, which is left to OPM or the appropriate agency, that doesn't apply to this case. It does not because this… Because he was not an employee, quote. Right. Folio is not an employee. Hopper is an employee. And so that part is subsumed by the statute. The statute trumps the regulation. That's our position. Yeah, I think Folio doesn't really talk about the statute because he wasn't an employee. Right, exactly. And on the penalty issue, I would point to Devine v. Sutermeister. This issue came up long ago, and the court said, sure, you have a falsification charge. You have someone who misrepresented themselves in order to gain appointment to the federal service. But that does not mean that there's no review of the penalty. It's not automatic. So once you're under Chapter 75, I think Sutermeister applies, and there is review of the penalty. And again, this isn't the best record to look at how the board would do this. I think Hearn is a better case because in Hearn, there was actually… the Department of Army came in with evidence about the misconduct and the penalty and put on a case, which did not happen here. OPM chose not to put on a case, so we're stuck with a record with nothing about the penalty determination. Right, but their point is that's because you can't even look at their penalty determination. They shouldn't have to put on a case because the board has no authority over that determination. No, I understand that, but their objection was certainly preserved for the record, and they could have still brought it to this court. And they did not have to not put on any evidence at the hearing. So I think that this issue of, okay, this is under Chapter 75. What about deference? I think that issue is hard to decide on this lack of a record because there was nothing for the board to defer to here. There's no deciding official testifying. But if we had set the position, then there would be something to decide in future cases. I think it may be. And what would be the case then? I mean, if you're saying that we review the board's… the board has authority to review OPM's penalties for reasonableness, I think that's the word that you used. Right. And it has the same type of review standard for other agencies other than OPM. And the board grants deference to other agencies, but not to the OPM? Well, the reason for that is because, you know, the regular agency, the employees there, every work day, the agency is very familiar with the individual. OPM is sitting from afar and doesn't know the individual. So that would be the reason for the deference. Thank you. Mr. Gauger, Ms. Kidmiller has four minutes of rebuttal time. Thank you, Your Honor. Picking up where the board just left off, the board's… in this case, only highlights how Chapter 75 is fundamentally different than and inconsistent with the suitability program and suitability action. Unlike Chapter 75, where an employee has engaged in some sort of misconduct while employed, the action here involves someone who never should have been hired in the first place. In addition, the agency's interest can be fundamentally different from and misaligned from OPM's. OPM is carrying out its presidentially granted authority and authority granted to it by Congress in 1103 and 1104 to protect government-wide public trust in the competitive system. As the board points out in its brief, I mean, OPM could say to somebody who's been an employee for 10 years, that OPM can order an agency to discharge that employee, even if that employee had been a model employee and was critical to the operations of the agency. Is that your position? That's right. And so, for example, in a case like this, with a material, intentional falsification on the employment application, an opposite rule would send the message that if an employee is successful in concealing their falsification for long enough, that it somehow can erase the wrongdoing. Maybe Congress just wanted OPM to act fast, like within the first year, so that if you act fast, then the employee doesn't have the rights and benefits of an employee. Well, we don't have any indication of that. To the contrary, we have this longstanding parallel system, which was firmly ensconced at the time of the CSRA and has continued since the CSRA. And as this Court explained in Folio, which Your Honors asked about, in Folio, the Court's decision did not even mention the fact that the individual there was not an employee under Chapter 75. It made some broader statements that are equally applicable here. You can't divorce a judicial decision from the facts on which it's premised, right? That's right. But there are still parts of Folio that, because this is a separate, coextensive system, apply equally, regardless of whether the person was covered under Chapter 75 or not. The only mention of adverse actions in Folio is to OPM's policy reasons for its more recent regulatory changes, explaining that it doesn't want anyone—it made changes to the regulation so that no one will confuse adverse actions and suitability actions in the future. As quickly on the point of deference, we just point out that Artman was not a Chevron case. More specifically, the cases where courts have deferred to the Board are, as we discussed earlier, where you have appellate procedures or adjudicatory functions at issue. So Cornelius v. Nutt deferred to an interpretation of the appellate procedures. This court's decision in Garcia, similarly, appellate procedures. And Abrams was an ALJ good cause case, which the statute specifically vests authority in the Board over those issues. So because OPM's system has been longstanding and coextensive and is the one that harmonizes all parts of the statute We'd ask this court to reverse the Board's decision and remand for adjudication under 5 CFR 731.501. Thank you. Thank you, counsel. We will take the case under advisement.